IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| RANDY SCOTT BUCKNER, | ) | |
| #212474, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:11-CV-393-MEF |
| | ) | [WO] |
| RICHARD ALLEN; GWENDOLYN | ) | |
| MOSLEY; LEWIS BOYD; | ) | |
| KENNETH SCONYERS; | ) | |
| ANTHONY ASKEW; | ) | |
| GWENDOLYN BABERS, and | ) | |
| STEVEN WALKER, | ) | |
| | ) | |
| Defendants. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.  INTRODUCTION**

This case is before the court on a 42 U.S.C. § 1983 complaint filed by Randy Scott

Buckner ["Buckner"], an indigent state inmate currently incarcerated at the Easterling

Correctional Facility ["Easterling"].  Buckner alleges he follows the Native American

religion, and he makes the following claims:

(1) defendants allow anyone on the "approved list" to be on the Native
American sacred grounds, knowing that some racist persons on the list
desecrate the sacred grounds, and defendants refuse to take corrective action;

(2) defendants break the ceremonial circle on Native American grounds to
accommodate officers moving segregation inmates;

(3) defendants refuse to allow tobacco for ceremonial purposes or transfer

Native American inmates to institutions that allow tobacco;

(4) defendants limit fires to three days a week while other institutions have fires daily;

(5) defendants refuse to allow Native American inmates to use tobacco in the ceremonial pipe;

(6) defendants prevent Native Americans from using the sweat lodge because it is 100 yards from the ceremonial grounds, the area is too small, tobacco is prohibited, and Buckner is not allowed to transfer to an institution with a functioning sweat lodge and tobacco use; and

(7) defendant Chaplain Askew desecrated his ceremonial items by touching them and laughing at him when he complained.

*Compl. - Doc. No. 1*. Buckner complains defendants actions violate his rights under the First Amendment, Eighth Amendment, Fourteenth Amendment, Alabama Constitution, and Alabama Department of Corrections ["ADOC"] Policy No. 333.[1]  *Id.* at 2-5. Buckner names as defendants Richard Allen, Gwendolyn Mosley, Lewis Boyd, Kenneth Sconyers, Anthony Askew, Gwendolyn Babers, and Steven Walker, and Buckner sues them in their individual and official capacities. Buckner seeks injunctive relief and monetary damages for the alleged violations.[2]  *Id.* at 6.

---

[1]In his response to the defendants' report, Buckner states he is raising a claim under the Religious Land Use and Institutionalized Person Act ["RLUIPA"]. *Doc. No. 30* at 1. Buckner never received permission to amend his complaint to add a claim under RLUIPA. Consequently, the court does not consider a RLUIPA claim.

[2]Specifically, Buckner asks for removal of the "sweat lodge" designation at Easterling, $5,000 from each defendant "for gross negligence due to personal bias and extreme prejudice. And transfer to another camp." *Doc. No. 1* at 6.

The defendants filed an answer, special report, and supporting evidentiary materials addressing Buckner's claims for relief. *Doc. Nos. 19, 20.* Defendants argue Buckner's claims are unclear, his claims are without merit, defendants are entitled to immunity, this court lacks jurisdiction to award the relief Buckner seeks, and Buckner failed to exhaust his available administrative remedies before filing suit, as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e.

The court informed Buckner that the defendants' special report may, at any time, be treated as a motion for summary judgment and explained to Buckner the proper manner in which to respond to a motion for summary judgment. *Doc. No. 21.* Buckner responded. *Doc. No. 30.* The court deems it appropriate to treat the defendants' report and supplemental report as a motion for summary judgment. Thus, this case is now pending on the defendants' motion for summary judgment. Upon consideration of this motion, the evidentiary materials filed in support thereof and the plaintiff's response, the court concludes that the defendants' motion for summary judgment is due to be granted.

## II.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former Fed. R. Civ. P. 56 omitted); *see* Fed. R. Civ. P. 56(a)

3

("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[3] The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [- now dispute -] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-24.

The defendant has met his evidentiary burden and demonstrated the absence of any genuine dispute of material fact. Thus, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324;

---

[3]Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions." Fed. R. Civ. P. 56 Advisory Committee Notes. Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.' 'Dispute' better reflects the focus of a summary-judgment determination." *Id.* "'Shall' is also restored to express the direction to grant summary judgment." *Id.* Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior versions of the rule remain equally applicable to the current rule.

Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact [by citing to materials in the record including affidavits, relevant documents or other materials] the court may . . . grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it.").  A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor.  *Greenberg*, 498 F.3d at 1263.

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of professional judgment.  In respect to the latter, our inferences must accord deference to the views of prison authorities. [] Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted).  Consequently, to survive the defendant's properly supported motion for summary judgment, McKeithen is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims of constitutional violations.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Fed. R. Civ. P. 56(e).  "If the evidence [on which the nonmoving party relies] is merely colorable . . . or is not significantly probative . . . summary judgment may be granted."  *Anderson*, 477 U.S. at 249-50.  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party."  *Walker v. Darby*, 911 F.2d 1573, 1577 (11th

Cir. 1990) (citing *Anderson*, 477 U.S. at 252).  Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for summary judgment.  *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (per curiam) (plaintiff's "conclusory assertions . . . , in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment"); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate "produced nothing, beyond his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("[M]ere verification of party's own conclusory allegations is not sufficient to oppose a motion for summary judgment. . . .").  Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party.  *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Sw. Forest Indus., Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (if on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363

F.3d 1099, 1101 (11th Cir. 2004).  What is material is determined by the substantive law applicable to the case.  *Anderson*, 477 U.S. at 248; *Lofton v. Sec'y of the Dep't of Children and Family Servs.*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment.").  "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted).  To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).  In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex*, 477 U.S. at 323-24 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show no genuine dispute as to a requisite material fact); *Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor.).

7

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *Beard*, 548 U.S. at 525; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. In this case, the plaintiff fails to demonstrate a requisite genuine dispute of material fact in order to preclude summary judgment.

## III. DISCUSSION

### A.  Defendant Allen

Buckner names as a defendant Richard Allen, the former Commissioner of the Alabama Department of Corrections (ADOC). Buckner sues Allen "for allowing said act to go on for so long." *Pl.'s Resp. - Doc. No. 30* at 6-7. To the extent Buckner alleges that Allen is responsible for the actions of other correctional officers, Buckner's claims fail.

"Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) ("[S]upervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability."); *Marsh v. Butler County*, 268 F.3d 1014, 1035 (11th Cir. 2001) (A

8

supervisory official "can have no respondeat superior liability for a section 1983 claim."). "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677. Thus, liability could attach to defendant Allen only if he "personally participate[d] in the alleged unconstitutional conduct or [if] there is a causal connection between [his] actions . . . and the alleged constitutional deprivation." *Cottone*, 326 F.3d at 1360.

Buckner has presented no evidence, nor can the court countenance the existence of any evidence, which would create a genuine issue of disputed fact with respect to the claims lodged against defendant Allen. Allen avers that he did not know Buckner, he did not control the daily operation of Easterling, and he has no knowledge of the allegations about which Buckner complains. Rather, it is undisputed that Allen did not participate in any of the acts about which Buckner complains.

In light of the foregoing, defendant Allen can be held liable for decisions of the other defendants only if his actions bear a causal relationship to the purported violation of Buckner's constitutional rights. To establish the requisite causal connection and therefore avoid entry of summary judgment in favor of defendant Allen, Buckner must present sufficient evidence which would be admissible at trial of either "a history of widespread abuse [that] put[] [the defendant] on notice of the need to correct the alleged deprivation, and [he] fail[ed] to do so. . . ." or "a . . . custom or policy [that] result[ed] in deliberate indifference to constitutional rights, or . . . facts [that] support an inference that [Allen]

9

directed the [facility's staff] to act unlawfully, or knew that [the staff] would act unlawfully and failed to stop them from doing so." *Cottone*, 326 F.3d at 1360 (internal punctuation and citations omitted).  A thorough review of the pleadings and evidentiary materials submitted in this case demonstrates that Buckner has failed to meet this burden.

The record before the court contains no probative evidence to support an inference that Allen directed the other defendants to act unlawfully or knew that they would act/acted unlawfully and failed to stop such action.  In addition, Buckner has presented no evidence of obvious, flagrant or rampant abuse of continuing duration in the face of which Allen failed to take corrective action.  Finally, the undisputed evidentiary materials submitted demonstrate that the challenged act did not occur pursuant to a policy enacted by Allen.  Thus, the requisite causal connection does not exist in this case and liability under the custom or policy standard is not warranted.  Summary judgment is therefore due to be granted in favor of defendant Allen.

## B.  Exhaustion

As part of their motion for summary judgment, defendants assert that Buckner's claims are due to be dismissed as premature because he failed to exhaust his available administrative remedies as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a).  *Defs.' Report - Doc. No. 19* at 12-13.  Specifically, defendants maintain that Buckner never filed a Request for Religious Assistance as provided in Alabama Department of Corrections ["ADOC"] Administrative Regulation 313 ["AR 313"].  *Summers Aff. - Doc.*

10

*No. 19-5* at 2; *Defs.' Doc. No. 19-3* at 11.

The PLRA requires exhaustion of available administrative remedies before a prisoner can seek relief in federal court on a 42 U.S.C. § 1983 complaint.  Specifically, 42 U.S.C. § 1997e(a) directs that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  "Congress has provided in § 1997e(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative remedies."  *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001).  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  Exhaustion of all available administrative remedies is a precondition to litigation and a federal court cannot waive the exhaustion requirement. *Booth*, 532 U.S. at 741; *Alexande*r *v. Hawk*, 159 F.3d 1321, 1325 (11th Cir. 1998); *Woodford v. Ngo*, 548 U.S. 81, 93 (2006).  Moreover, "the PLRA exhaustion requirement requires ***proper exhaustion***."  *Id*. (emphasis added).

The Supreme Court in *Woodford* determined "[proper exhaustion] means . . . that a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court."  *Id.* at 88.  The Court further explained "[p]roper exhaustion demands compliance with an

11

agency's deadlines and other critical procedural rules [prior to seeking relief from a federal court] because no adjudicative system can function effectively without imposing some orderly structure on the courts of its proceedings . . . Construing § 1997e(a) to require proper exhaustion also fits with the general scheme of the PLRA, whereas [a contrary] interpretation [allowing an inmate to bring suit in federal court once administrative remedies are no longer available] would turn that provision into a largely useless appendage." *Id*. at 91-93. This interpretation of the PLRA's exhaustion requirement "carries a sanction" for noncompliance and avoids "mak[ing] the PLRA exhaustion scheme wholly ineffective." *Id*. at 95. Consequently, a prisoner cannot "proceed . . . to federal court" after bypassing available administrative remedies, either by failing to properly exhaust administrative remedies or waiting until such remedies are no longer available, as allowing federal review under these circumstances would impose "no significant sanction" on the prisoner and "the PLRA did not create such a toothless scheme." *Id*. Further, the PLRA's exhaustion requirement contains no futility exception where there is an available inmate grievance procedure. *See Booth*, 532 U.S. at 741 n.6 ("[W]e will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise."); *Cox v. Mayer*, 332 F.3d 422, 424-28 (6th Cir. 2003) (holding that the exhaustion requirement applies to a former prisoner who filed his complaint without exhausting his administrative remedies and who had since been released from custody); *see also Massey v. Helman,* 196 F.3d 727, 733 (7th Cir. 1999).

This court may properly resolve the factual issue relating to exhaustion, *see Bryant v. Rich,* 530 F.3d 1368, 1374 (11th Cir. 2008), and finds that the facts support defendants' statement that Buckner never exhausted his administrative remedies.  Buckner is an inmate at Easterling, and he follows the Native American religion.  The ADOC adopted policies and regulations concerning religious programming for inmates. Administrative Regulation 333 ["AR 333"] on Religious Program Services  approves certain practices and items for Native American inmates, including among other things, the location of ceremonial grounds, prayer pipes, and the herbs "Sage, Sweetgrass, Cedar, Kinnikinick, and Tobacco." *Defs.' No. 28-10* at 13 (AR 333 § V(E)(12)).   Buckner believes that AR 333 § V(E)(12), which permits tobacco for Native Americans' religious use, creates a liberty interest for Native American inmates to have tobacco for religious use at Easterling.  *Doc. No. 30* at 3.

Although tobacco is listed as a permitted item in AR 333, tobacco is prohibited by the ADOC at Easterling.  Prison staff instead allow Native American inmates at Easterling to purchase any of the other four herbs for use.  *Summers Aff. -  Doc. No. 19-5* at 3.

Christopher H. Summers, a Chaplain at Holman Correctional Facility, explained that to satisfy the religious dispute resolution requirement in AR 313, an inmate files a Request for Religious Assistance pursuant to AR 313 ["AR 313 Application"].  *Summers Aff. - Doc. No. 19-5* at 2. The policy on Chaplain Services and Religious Activities provides, in relevant part:

An inmate . . . whose religious needs cannot be met within the framework of

13

non-denominational, non-sectarian religious service may submit a written request to the Chaplain . . . for assistance. It should be the Chaplain's responsibility to investigate the inmate's request for religious assistance and determine an appropriate course of action, in conjunction with the Warden or Director if it impacts or has the capacity to impact upon security. The Religious Activities Review Committee has final approval on such matters. . . . It is the inmate's responsibility to provide an authoritative source of information by which the Chaplain may verify the existence of the religion and determine beliefs and practices.

*Defs.' Doc. No. 19-3* at 7 (AR 313 § III(B)(1)-(2)). The regulation does not identify specific deadlines for processing applications. *Id.* AR 313 provides that religious objects or practices "may be restricted or prohibited when they are considered to be a compromise to the security, safety, health or good order of the institution . . . ." *Id.* at 11 (AR 313 § III(K)(1)). AR 313 also provides a means for resolving disputes about religious matters, and it states, in relevant part, "When the Chaplain is unable to resolve a religious dispute, inmates shall use the inmate grievance procedure for resolution of disputes regarding approval or restriction on religious practices or articles." *Id.* (AR 313 § III(L)).

The undisputed record in this case establishes that Easterling provides an administrative process for inmates to request assistance with religious practices and raise religious concerns. The evidentiary materials submitted by defendants demonstrate that Buckner never pursued and therefore failed to properly exhaust the administrative process with respect to his religious requests about which he complains in this case. As noted, exhaustion of available remedies applies to all prisoners in any facility, it is mandatory, and it may not be waived by the court. *See Alexander*, 159 F.3d at 1324-26 (exhaustion

14

requirement of 42 U.S.C. § 1997e(a) is mandatory, whether the claim is brought pursuant to § 1983 or *Bivens*); *see also Porter*, 534 U.S. at 532.  Furthermore, this court may not consider the adequacy or futility of administrative remedies, but only the availability of such. *Higginbottom v Carter*, 223 F.3d 1259, 1261 (11th Cir. 2000) (citing *Alexander*, 159 F.3d at 1323).  To demonstrate that administrative remedies were unavailable, Buckner must provide specific facts which indicate that prison staff inhibited him from utilizing the grievance process. *See Boyd v. Corr. Corp. of Am.*, 380 F.3d 989, 998 (6th Cir. 2004) ("nonspecific allegations of fear" and "subjective feeling[s] of futility" no excuse for failure to exhaust administrative remedies).

Buckner states that inmate Cowart represented the Native American inmates and filed an AR 313 on their behalf at Askew's request because Askew "wouldn't deal with every individual about the bigger picture, events, memos, ar[r]angements for ceremonies, etc." *Cowart Aff. - Doc. No. 30-2* at 1.  Cowart avers that on February 17, 2009, Askew said that a decision had been made on their requests concerning Native American policies at Easterling, but that as of August 15, 2011, the inmates had received no response from Askew or any other prison official regarding their request.  *Id.*  To date, Buckner has not informed the court whether he received an answer to Cowart's requests or whether he asked the Religious Activities Review Committee for further guidance.  Buckner does not dispute that he failed to file an AR 313 Application, and he does not state that staff inhibited him from pursuing the administrative remedies in AR 313 *before* filing this lawsuit.

15

Based on the foregoing, the court concludes that Buckner's allegations against defendants regarding religious assistance and practices presented in this cause of action are subject to dismissal as he failed to  properly exhaust an administrative remedy available to him which is required before he may proceed in this court on his claims.  *Woodford*, 548 U.S. at 87-94.  His complaint must therefore be dismissed without prejudice for failure to exhaust administrative remedies before filing suit.

### C.  Buckner's Federal Claims Fail on the Merits

Even assuming Buckner satisfies the requirements of § 1997e(a), his suit is due to be dismissed because none of his federal claims have merit.

### 1.  Tobacco Use

Buckner complains that he cannot use tobacco during Native American ceremonies or in a ceremonial pipe.  The court previously addressed nearly identical claims regarding tobacco use by Thomas Otter Adams, a Native American inmate at Easterling.  *See Adams v. Mosley*, No. 2:05-cv-352-MHT, 2008 WL 4369246 (M.D. Ala. Sept. 25, 2008) (adopting recommendation by the Honorable Charles S. Coody), *appeal dismissed as frivolous*, No. 08-16917-B (11th Cir. Mar. 13, 2009).  The court ruled that the prison's complete ban on tobacco did not violate the inmate's rights under the First Amendment,[4] Due Process,[5] Equal

---

[4]To demonstrate a free exercise violation of the First Amendment, an inmate must show that prison officials administered or implemented a policy or regulation, not reasonably related to any legitimate penological interest or security measure, which substantially burdens and significantly interferes with the practice of the inmate's religion or restricts his free exercise of a sincerely held religious belief.  *Hernandez v. Comm'r*, 490 U.S. 680, 699 (1989); *see also*

Protection,[6] Eighth Amendment,[7] or Religious Land Use and Institutionalize Persons Act

["RLUIPA"] of 2000.  *Id.* at *4-5, *8-13.  Similar claims regarding the tobacco ban raised

under the First Amendment were dismissed in *Coleman v. Allen*, 2:09-cv-311-TMH, 2012

WL 4350945 (M.D. Ala. Sept. 24, 2012) (adopting recommendation by the Honorable Susan

Russ Walker, 2012 WL 4378086, at *8 (M.D. Ala. Sept. 7, 2012) (Native American inmate

failed to show tobacco ban at Easterling violates the First Amendment)).  In addition, the

court in *Adams* ruled that the prison officials did not violate the inmate's due process rights

---

*Turner v. Safley*, 482 U.S. 78, 89-91 (1987) (The burden is on inmate to disprove the validity of the regulation).  Factors to be considered in making the determination include: (1) whether there is a valid, rational relationship between the regulation and the legitimate government interest it serves; (2) whether there are alternative means of exercising the right available to the inmates; (3) the impact accommodation of the asserted right will have on jail staff and other inmates; and (4) the absence of ready alternatives as evidence of reasonableness of the regulation.).

[5]Two circumstances give rise to due process protections for inmates. "The first is when a change in a prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court. [] The second is when the state has consistently given a certain benefit to prisoners (for instance, via statute or administrative policy), and the deprivation of that benefit 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'"  *Bass v. Perrin*, 170 F.3d 1312, 1318 (11th Cir. 1999) (citing *Sandin v. Conner*, 515 U.S. 472, 484 (1995)) (other citations omitted).

[6]To establish an equal protection violation, an inmate must show, at a minimum, that (1) "he is similarly situated to other prisoners who received" more favorable treatment; and (2) the prison official "engaged in invidious discrimination against him based on race, religion, national origin, or some other constitutionally protected basis."  *Damiano v. Fla. Parole & Prob. Comm'n*, 785 F.2d 929, 932-33 (11th Cir. 1986); *see also Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001) (per curiam) (citing *Damiano*); *Adams*, 2008 WL 4369246 at *8-9 (citing *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979)).

[7]An inmate raising an Eighth Amendment claim must show (1) a deprivation of a basic human need which is sufficiently serious, and (2) officials acted with a sufficiently culpable state of mind.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

by refusing to transfer him to an institution that permits tobacco use. *Id.* at *4-6, *12. Transfer to more adverse conditions of confinement does not, itself, violate the Constitution. *See Sandin*, 515 U.S. at 485-86 (disciplinary confinement of inmate in segregation does not implicate a constitutionally protected liberty interest); *see also Wilkinson v. Austin*, 545 U.S. 209, 223 (2005) (discussing application of *Sandin* to placement of inmates in "supermax" facility). Buckner presents no additional evidence that differentiates him or the circumstances of his case from those in *Adams* and *Coleman.* Consequently, defendants are entitled to summary judgment on Buckner's claims that defendants wrongly refused to allow him to use tobacco or to transfer him to an institution that permits tobacco use.

### 2.  Interruption of Ceremonies, Access to Fires, Sweat Lodge

Buckner's other claims fare no better. Buckner complains that guards interrupt Native American ceremonies so they can move prisoners who are in administrative segregation, the prison allows them limited use of fires compared to inmates at other institutions, the sweat lodge is too far from the ceremonial grounds, and the size of the sweat lodge area is inadequate. He asks to be transferred to a facility with a "functioning" sweat lodge. *Compl. - Doc. No. 1* at 4.

In *Coleman*, the court rejected an Easterling inmate's complaint that prison officials violated his First Amendment rights when guards interrupted Native American religious services to move other, segregated inmates. *See Coleman*, 2012 WL 4378086 at *4, *9. The court also rejected a claim that prison limits on the timing and size of fires for Native

18

American ceremonies violated the First Amendment. *Id.* at *5 (limits on the size and advanced scheduling for fires did not unduly burden inmate's free exercise of religion). The court dismissed the inmate's First Amendment claim that the sweat lodge area was too small and not built according to religious requirements. *Id.* at *7 (inmate "has not produced any evidence that he could not engage in other religious practices and express his faith in the absence of a 'legitimate' sweat lodge, or that a purportedly 'non-legitimate' sweat lodge constitutes a substantial infringement" on the inmate's religious beliefs). Again, Buckner does not explain how his circumstances differ materially from those in *Adams* or *Coleman*, consequently his claims are foreclosed by the decisions in *Adams* and *Coleman. S*ummary judgment is therefore due to be granted in favor of defendants on Buckner's First Amendment claims that defendants should not interrupt Native American ceremonies to move inmates in segregation, that the sweat lodge is not built according to religious specifications, and that defendants unduly limit Buckner's access to fires for Native American ceremonies.

To the extent Buckner raises a separate Equal Protection claim regarding the number of fires he may have, his claim fails. Buckner makes conclusory allegations that two other ADOC facilities permit daily fires for Native Americans while he is allowed fire only three times a week. Buckner does not identify the other facilities or the manner in which fires there are permitted, and he does not submit evidence suggesting defendants refuse to allow him fires at Easterling because of his Native American religion or some other constitutionally

protected basis.  Buckner cannot show on this record that he is similarly situated to others who receive more favorable treatment, or that defendants acted with purposeful discrimination against him based on some protected basis.  *See Jones,* 279 F.3d at 946-47. Summary judgment is therefore due to be granted to defendants on Buckner's equal protection claim.

### 3.  Gang Members on Ceremonial Grounds

Buckner complains that defendants allow "anyone to be on the 'approved list' for the Native American grounds," knowing that some racist gang members are entering the grounds and desecrating them.  *Compl. - Doc. No. 1* at 3.  Buckner admits the gang members do "not pose any security issues," but "they do disrupt religious practices of sincere practitioners." *Pl.'s Resp. - Doc. No. 30* at 4.

To gain access to the Native American ceremonial grounds, the prison "requir[es] inmates to submit a request to the Chaplain identifying them as an adherent to the Native American faith and requesting access to the ceremonial ground . . . ."  *Coleman*, 2012 WL 4378086, at *10.  The rationale for the policy is both for the safety and security of inmates, correctional personnel, and visitors, "as well as to ensure that inmates have the opportunity to practice their chosen religion."  *Id.*  The prison cannot exclude sincere practitioners of the Native American faith from the Native American grounds simply because they are not of Native American race.  *E.g.*, *Morrison v. Garraghty*, 239 F.3d 648, 658 (4th Cir. 2001) (prison cannot deny non-Native Americans the ability to possess Native American religious

20

based on their race). Defendants state, and Buckner does not dispute, that "whenever any gang members are noticed on the Native American grounds they are dispersed and disciplined." *Boyd Aff. - Doc. No. 19-2* at 1. Based on the summary judgment record, defendants do not allow racist gang members to desecrate the Native American grounds. Buckner has not created a genuine issue whether the prison's policy is reasonably related to legitimate penological interests, or that defendants' actions unduly burdened his ability to engage in the free exercise of his religion. Buckner has therefore failed to show a violation of his First Amendment rights with respect to this claim, and defendants are entitled to summary judgment on it.

### 4. Desecration

Buckner claims that defendant Chaplain Askew desecrated Buckner's "ceremonial items, sacred boxes, or bundles upon entry to Easterling Correctional Facility" by touching them. *Doc. No. 1* at 5. When asked to stop, Askew allegedly laughed and said, "I can do this, I'm a holy man." *Id.* Askew denies touching Buckner's religious items, laughing at him, or making derisive comments to him. *Askew Aff. - Doc. No. 19-8* at 2.

Assuming Askew did as Buckner alleges, his First Amendment claim fails. First, it is unclear that Askew violated any prison rule. The prison policy states that prison personnel may not touch Native American medicine bags or sacred pipes.[8] Buckner does not

---

[8]Policy AR 333, section V(E)(18) provides, in relevant part: "Specifically, the ADOC shall train its personnel not to touch the medicine bags or sacred pipes of the Native American inmates. Should an officer believe that it is necessary to inspect the contents of a Native American's medicine

specifically say that Askew touched medicine bags or sacred pipes.   Second, the brief

mishandling of his sacred items upon an isolated act of negligence does not constitute a

policy or custom, and it does not amount a First Amendment infringement on Buckner's free

exercise of religion.  *E.g.*, *Lolley v. Louisiana Corr. Servs.*, No. 09–00555–CG–B, 2011 WL

4499331 at *6 (S.D. Ala. Sept. 9, 2011) (brief mishandling by guard of sacred item box

during an official prison shakedown was legitimate search and reasonably related to

legitimate penological goal of security, thus it did not violate *Turner*).  Buckner, therefore,

fails to create a genuine issue whether his First Amendment right was violated, and summary

judgment is due to be granted on this issue.

### D.  Violations of State Law and Prison Regulations

Buckner asserts that defendants violated the Alabama Constitution and ADOC rules.

To the extent Barley asserts a violation of state law as the basis for § 1983 relief, he is

entitled to no relief from this court.  Violations of departmental rules or regulations do not,

standing alone, infringe on an inmate's federal constitutional rights.  *See Sandin*, 515 U.S.

at 481-82 (prison regulations are not intended to confer rights or benefits on inmates but are

merely designed to guide correctional officials in the administration of prisons); *United*

*States v. Caceres*, 440 U.S. 741, 751-52 (1979) (mere violations of agency regulations do not

raise constitutional questions); *Magluta v. Samples*, 375 1269, 1279 n.7 (11th Cir. 2004)

---

bag or sacred pipe, the officer shall bring the inmate to the Chaplain's office where the contents of
the bag or pipe can be visually inspected."  *Defs.' Ex. 10 - Doc. No.' 19-10* at 14-15.

(noting that "procedural requirements set out in [an administrative] regulation are not themselves constitutional mandates.").

The court's exercise of supplemental jurisdiction over the state law claims is completely discretionary. Under 28 U.S.C. § 1367(c)(3), the court "may decline to exercise supplemental jurisdiction over a [state law claim] if . . . the district court has dismissed [the related federal] claim[] over which it has original jurisdiction . . . ." The court's discretion is advised by *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966), in which the Court held that

> [n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.[] Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.[]

*Id.* at 726 (footnotes omitted). In *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 (1988), the Supreme Court reiterated that "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain,[] the federal court should decline the exercise of jurisdiction by dismissing the [claim] without prejudice . . . ." *Id.* (footnote omitted). Accordingly, the court concludes that Buckner's claims alleging violations state law should be dismissed without prejudice.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The defendants' motion for summary judgment be GRANTED.

23

2. Judgment be GRANTED in favor of the defendants.

3. Plaintiff's federal claims be DISMISSED with prejudice.

4. Plaintiff's state-law claims be DISMISSED without prejudice.

5. The costs of this proceeding be taxed against the plaintiff.

It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on or before **February 18, 2014**. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive, or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); s*ee Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); s*ee also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 3rd day of February, 2014.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE